UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MALIK LAYNE,<br><br>                              Petitioner,<br><br>                -against-<br><br>MARLYN KOPP, Superintendent, Sing Sing Correctional Facility,<br><br>                              Respondent. | Case No. 1:21-cv-03989 (JLR)<br><br>**OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

      Petitioner Malik Layne ("Petitioner" or "Layne") brings the above-captioned action for a writ of habeas corpus pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254. Dkt. 1 ("Pet."). In seeking the writ, Petitioner challenges his New York State conviction of manslaughter in the first degree. Pet. ¶¶ 17-18. Petitioner contends that the trial court improperly instructed the jury on the duty to retreat, violating his due process rights. *See id.* On May 5, 2021, the Court referred the petition to Magistrate Judge Moses for a report and recommendation. Dkt. 6. On June 7, 2024, Magistrate Judge Moses issued a Report and Recommendation recommending that the petition be denied. Dkt. 26 (the "R&R"). On July 19, 2024, Petitioner filed timely objections to the R&R. Dkt. 29 ("Obj.").

      For the reasons set forth below, the Court adopts the R&R in full and denies the petition.

## BACKGROUND

      The Court incorporates the portion of the R&R that describes the factual background and procedural history of the case, and references the R&R for a more comprehensive

background. *See* R&R at 1-13. The following summary focuses on the facts necessary to evaluate the issues presented.

I. **Factual Background and the Trial**

Petitioner's conviction arises from an altercation with Tyreek Taylor ("Taylor") in a Manhattan restaurant on July 2, 2013. R&R at 1-3. Petitioner and two friends entered the restaurant shortly before 1:00 a.m. *Id.* at 1. Petitioner saw Taylor at the counter, drunk and yelling. *Id.* at 2. The two briefly exchanged words, and Taylor left the restaurant and went outside. *Id.* While Taylor was outside, Petitioner looked out the window after Taylor and removed a gun from his pocket. *Id.* A minute later, Taylor reentered the restaurant and tried to punch Petitioner. *Id.* at 3. Petitioner ducked, evading the punch, and shot Taylor in the neck, killing him. *Id.*

Petitioner was tried before a jury in the New York Supreme Court, New York County, between February 2 and February 5, 2015. R&R at 4. Justice Edward McLaughlin presided. *Id.* The State called six witnesses and introduced evidence, including a surveillance video that showed the shooting. *Id.* at 5-6. Petitioner testified in his own defense. *Id.* at 6. Petitioner testified under direct examination that he thought that Taylor was going to "[a]ttack" him or "do something" when he came back into the restaurant, and Petitioner intended to use his gun "to scare [Taylor]." Dkt. 1-10 ("Tr.") 144:10-19. Petitioner also testified that when Taylor took a swing at him, he sought "[t]o defend [himself]," and that his gun went off when he raised his hand to "block" Taylor's punch. *Id.* at 146:19-147:21.

During closing arguments, Petitioner's counsel noted that the State bore the burden of proving beyond a reasonable doubt that Petitioner was not justified in using deadly force. Tr. 191:13-16. He also addressed the elements of justification, contending that Petitioner had reason to fear for his life due to Taylor's greater size, drunkenness, and attempt to punch

2

Petitioner, and argued that Petitioner had no room to retreat. *Id.* at 190:19-195:1. He also argued that Petitioner's use of deadly force — that is, shooting Taylor in the neck — was accidental. *Id.* at 195:21-197:9, 200:22-24. In its closing, the State asserted, among other things, that Taylor's single attempted punch could not justify the use of deadly force and that Petitioner had "other options." *Id.* at 213:4-9. The State also argued that Petitioner's accidental discharge theory was implausible and inconsistent with his justification defense. *Id.* at 206:16-25, 222:8-18.

After the parties rested, Justice McLaughlin charged the jury. R&R at 9. His charge included instructions on the defense of justification, along with repeated admonitions that Petitioner was "not required to prove that he was justified" and the State was "required to prove beyond a reasonable doubt that he was not justified." Tr. 233:3-7; *see also, e.g.*, *id.* at 236:11-14. After the charge, Justice McLaughlin conferred with the parties to ask if they had "[a]ny other requests or suggestions." *Id.* at 249:9-10. The State asked Justice McLaughlin to provide an instruction on the duty to retreat. *Id.* at 249:9-11. Petitioner objected, *id.* at 250:8-9, but Justice McLaughlin ultimately added a duty-to-retreat instruction, as well as an instruction that if the jury found justification, it could not find Petitioner guilty on any of the homicide allegations. Justice McLaughlin charged:

> If you find the [*State*] ha[s] *failed to disprove beyond a reasonable doubt justification*, then you cannot find guilt on any of the homicide allegations.
>
> If you find the [*State*] ha[s] *failed to disprove justification beyond a reasonable doubt*, then you[r] deliberations go down to the weapon charges, five and six and you mark down not guilty with regard to the homicide charges.
>
> You consider the homicide charges as I said in the order in which you find them on the verdict sheet.
>
> One other concept with respect to justification. *A defendant would not be justified if he knew that he could with complete safety to himself and others avoid the necessity of using deadly physical force by retreating.*

3

*Id.* at 254:6-19 (emphases added). [1]

During the jury's deliberations, Justice McLaughlin received a jury note asking for clarification on justification and deadly force. Tr. 258:8-10. He read back his earlier instructions, including the following duty-to-retreat instruction:

> A defendant would not be justified in using deadly physical force if he knew that he could, with complete safety to himself and others, avoid the necessity of using deadly physical force by retreating. *The [State is] required to prove beyond a reasonable doubt that the defendant was not justified.*

*Id.* at 262:16-21 (emphasis added).

The jury returned a guilty verdict and found Petitioner guilty of manslaughter in the first degree and two criminal weapons charges, and not guilty of the charge of murder in the second degree. Tr. 263:23-266:22. Justice McLaughlin sentenced Petitioner to twenty-five years for the manslaughter charge and ten years on each of the two weapons charges, resulting in an aggregate sentence of thirty-five years. Dkt. 1-11 at 7:23-8:8.

## II. Direct Appeal

Petitioner appealed his conviction and sentence. Pet. ¶ 8. The New York Appellate Division, First Department, unanimously affirmed Petitioner's conviction and sentence. *People v. Layne*, 114 N.Y.S.3d 289 (App. Div. 2019). As relevant here, it held that the trial court "providently exercised its discretion when, in response to the People's exception to the court's original justification charge, it added the principle of duty to retreat," since "[t]he evidence presented a jury question regarding defendant's ability to retreat safely," "the language employed by the court sufficiently conveyed the principle that the duty to retreat

---

[1] The relevant provision of the New York Penal Law provides that a person is not justified in using "deadly physical force if he or she knows that with complete personal safety, to oneself and others he or she may avoid the necessity of so doing by retreating." N.Y. Penal Law § 35.15(2)(a).

arose at the time defendant used deadly physical force," and Petitioner was "not prejudiced by the timing of this instruction, particularly because defense counsel had already made summation arguments on the issue of duty to retreat." *Id.* at 477-78. Petitioner sought permission to appeal to the New York Court of Appeals. Dkt. 1-3 at 2. Leave to appeal was denied on February 4, 2020. *See People v. Layne*, 142 N.E.3d 1180 (N.Y. 2020) (mem.); Dkt. 1-1 at 2. Petitioner's conviction became final when the deadline to file a petition for certiorari to the United States Supreme Court expired on May 4, 2020. R&R at 16 (citing *Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001)).

Having exhausted his state remedies, Petitioner then timely filed the instant petition for a writ of habeas corpus on May 4, 2021. *See* Pet.; R&R at 16.

### III. The R&R

Magistrate Judge Moses recommended that the petition be denied. *See* R&R at 1. First, she found that the dispute about whether the duty-to-retreat instruction was erroneous "concern[ed] 'only what state law required as to [the] contents' of the justification instructions, and hence present[ed] no federal question.'" *Id.* at 24 (quoting *DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir. 2004)). She explained that the Appellate Division had held that the jury charge comports with state law and that because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," *id.* at 22 (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)), the dispute was thus not reviewable by a federal habeas court, *id.* at 22-24. Second, Magistrate Judge Moses found that even if the duty-to-retreat instruction was erroneous, it was not constitutional error. *Id.* at 24-27. She acknowledged that under the Supreme Court's decision in *Sandstrom v. Montana*, 442 U.S. 510 (1979), a jury instruction that improperly relieves the State of the burden of proof on one or more elements of a charged criminal offense represents constitutional error. R&R at 24.

5

However, she rejected Petitioner's argument that the duty-to-retreat instruction relieved the State of its burden to disprove justification because: (1) the instruction did not permit the jury to presume any element of the crimes, (2) the instruction did not undermine Justice McLaughlin's frequent reminders that the State was required to prove every element of the charged crimes beyond a reasonable doubt, including disproving justification, and (3) when the instruction was viewed in the context of the overall charge, it did not "so infect[] the trial that the resulting conviction violat[ed] due process." *Id.* at 25-27 (quoting *Mojica v. Fischer*, 254 F. App'x 28, 30 (2d Cir. 2007) (summary order)). Finally, Magistrate Judge Moses found that any error was harmless due to the strong evidence negating Petitioner's claim of justification. *Id.* at 27-29.

Petitioner timely filed objections to the R&R, *see generally* Obj., and Respondent filed a response to Petitioner's objections on August 16, 2024, *see generally* Dkt. 33 ("Resp.").

## LEGAL STANDARDS

### I. Report and Recommendation

In its review of a report and recommendation on a dispositive motion, a district court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3). When a party submits timely objections to the report and recommendation, as Petitioner has done here, the district court reviews *de novo* any part of the magistrate judge's disposition to which the party objected. *See* 28 U.S.C. § 636(b)(1)(C); Fed R. Civ. P. 72(b)(3). "To the extent, however, that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018), *aff'd*, 837 F. App'x 841 (2d Cir. 2021) (summary order). "Objections of this sort are frivolous, general and conclusory and would

6

reduce the magistrate's work to something akin to a meaningless dress rehearsal." *N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (citation omitted).  Other portions of the report and recommendation, to which no specific objection is made, may be adopted "as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Eisenberg v. New Eng. Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)); *accord Irick v. Capra*, No. 23-cv-09123 (JLR) (JLC), 2024 WL 5039664, at *2 (S.D.N.Y. Dec. 9, 2024).

## II. Standard of Review under AEDPA

Under AEDPA, federal courts apply a "highly deferential standard for evaluating state-court rulings" on habeas review.  *Contreras v. Artus*, 778 F.3d 97, 106 (2d Cir. 2015).  Where, as here, a petitioner's claim was "adjudicated on the merits in State court proceedings," a federal court may not grant a petition for habeas relief unless the state court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see Musaid v. Kirkpatrick*, 114 F.4th 90, 107 (2d Cir. 2024) (same).

As to Section 2254(d)(1), "[a] state-court decision is contrary to clearly established federal law when 'it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.'"  *Musaid*, 114 F.4th at 107 (quoting *Brown v. Payton*, 544 U.S. 133, 141 (2005)).  An "unreasonable application" of Supreme Court precedent is one that "correctly identifies the governing legal rule but applies that rule

7

unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 572 U.S. 415, 426 (2014); *accord Carmichael v. Chappius*, 848 F.3d 536, 544 (2d Cir. 2017). Such application must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *White*, 572 U.S. at 419 (internal quotation marks omitted).

For purposes of Section 2254(d)(2), a state court decision is not based on an "unreasonable determination of the facts in light of the evidence" when "reasonable minds reviewing the record might disagree about the finding in question," *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015)), and a court "may not characterize . . . state-court factual determinations as unreasonable 'merely because [the court] would have reached a different conclusion in the first instance,'" *Brumfield*, 576 U.S. at 313-14 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)); *see also Jenkins v. Capra*, --- F. Supp. 3d ---, 2024 WL 5078063, at *9 (S.D.N.Y. Dec. 11, 2024) (same). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Schriro v. Landringan*, 550 U.S. 465, 473 (2007).

## DISCUSSION

Petitioner objects to the R&R on two grounds. He argues that (1) the duty-to-retreat instruction amounted to constitutional error under *Sandstrom*, Obj. at 2-4; and (2) the error was not harmless, *id.* at 4-5. Both of Petitioner's objections have been raised previously and expressly addressed by Magistrate Judge Moses. "Objections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'" *Irick*, 2024 WL 5039664, at *4 (alteration in original) (quoting *McDowell v. Heath*, No. 09-cv-07887 (RO) (MHD), 2013 WL 2896992, at *2 (S.D.N.Y. June 13, 2013)). Thus, the

8

appropriate standard of review here is clear error, *see Aponte v. Cunningham*, No. 08-cv-06748 (LAP), 2011 WL 1432037, at *1 (S.D.N.Y. Apr. 11, 2011), but, in an abundance of caution, the Court will review both of Petitioner's objections under a *de novo* standard.

For the reasons stated herein, the Court rejects Petitioner's arguments.

### A. The R&R Appropriately Held That Any Error in the Duty-to-Retreat Instruction Was Not Constitutional Error

Petitioner argues, just as he did before Magistrate Judge Moses, that the duty-to-retreat instruction was constitutional error. Obj. at 2-4. Specifically, he contends that the challenged instruction "confused the jury into thinking that a duty to retreat arose *before* the threat of imminent deadly physical force" and shifted the burden to Petitioner to prove that he could not have retreated, violating *Sandstrom*. He contends this error infected the entire trial. The Court does not agree.

The Second Circuit has repeatedly held that "[i]n order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001) (alteration in original) (quoting *Casillas v. Scully*, 769 F.2d 60, 63 (2d Cir. 1985)) (collecting cases); *accord Johnson v. Griffin*, No. 22-2007, 2024 WL 302387, at *2 (2d Cir. Jan. 26, 2024) (summary order). "Where an error in a jury instruction is alleged, 'it must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment,'" *Davis*, 270 F.3d at 123 (quoting *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)), that is, "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *id.* (quoting *Cupp*,

414 U.S. at 147). *See also McTiernan v. Tedford*, No. 21-cv-01543 (JPC) (JLC), 2024 WL 3759598, at *8 (S.D.N.Y. Aug. 12, 2024) (similar). Petitioners seeking to show "constitutional error from a jury instruction that quotes a state statute," as Petitioner does here, bear an "especially heavy burden." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (internal quotation marks omitted). That is, "the defendant must show both that the instruction was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Id.* at 190-91 (quoting *Estelle*, 502 U.S. at 72). The challenged instruction "'may not be judged in artificial isolation,' but must be considered in context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147).

First, Magistrate Judge Moses properly found that Petitioner had not demonstrated a reasonable likelihood that the jury applied the duty-to-retreat instruction in a way that relieved the State of its burden of proving beyond a reasonable doubt that Petitioner was not justified. She concluded that the jury would not have applied the instruction in a way that relieved the State of proving every element beyond a reasonable doubt, given the trial court's "frequent and consistent instructions that the [State] w[as] required to prove every element of [the charged] crimes beyond a reasonable doubt." R&R at 25-26. Petitioner does not engage with Magistrate Judge Moses's reasoning in his objections to the R&R. Instead, Petitioner contends that the instruction misled the jury to believe that he was required to retreat before the use of deadly force. *See* Obj. at 3. He argues that this erroneously assigned him an "unachievable 'duty'" and thus required him to prove he could not retreat, rather than requiring the State to disprove justification, in violation of *Sandstrom*. *Id.* at 3-4. But Justice McLaughlin never referenced any "duty" to retreat in his jury instructions. *See* Tr. 254:17-19

10

(instructing the jury that "[a] defendant would not be justified if he knew that he could with complete safety to himself and others avoid the necessity of using deadly physical force by retreating").[2] Petitioner does not explain how this instruction assigned him a duty or required him to prove he could not retreat. Moreover, each time that Justice McLaughlin instructed the jury on the duty to retreat, he expressly admonished them that the State bore the burden of disproving justification. *See id.* at 254:6-19; *id.* at 262:20-21. This does not rise to the level of constitutional error. *See Mojica v. Fisher*, No. 00-cv-08933 (RJH) (KNF), 2005 WL 2230450, at *7 (S.D.N.Y. Sept. 12, 2005) (challenged portion of justification charge did not impermissibly shift burden of proof to the petitioner where "throughout the charge, the trial judge made clear the fact that petitioner had no obligation whatsoever with respect to his justification defense"), *aff'd*, 254 F. App'x 28 (summary order); *cf. Lind v. Artuz*, No. 97-cv-03331 (RPP), 2001 WL 262662, at *12 (S.D.N.Y. Mar. 15, 2001) (finding it "unlikely that a reasonable juror would view the erroneous sentence in the charge . . . as having shifted the burden of proof to the defendant," since "[p]rior to the erroneous sentence, the judge charged both on the presumption of innocence and the requirement that the prosecution prove each essential element of the crime or crimes charged beyond a reasonable doubt"), *aff'd*, 23 F. App'x 98 (2d Cir. 2002) (summary order).

Further, Petitioner's reliance on *Sandstrom* is misplaced. In *Sandstrom*, the Supreme Court held that a jury instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" violated the Due Process Clause because it shifted the burden of persuasion on the element of intent to the defendant. 442 U.S. at 513, 519, 524.

---

[2] Indeed, the structure of this instruction is no different from the unchallenged instruction that Justice McLaughlin gave on the initial-aggressor exception to justification. *See* Tr. 235:8-10 ("The defendant would not be justified in using deadly physical force if he was what is known as the initial aggressor.").

11

Magistrate Judge Moses found that *Sandstrom* did not support Petitioner's position, since the jury at his trial "was neither instructed nor permitted to presume any element of the crimes with which he was charged." R&R at 25. As discussed above, Justice McLaughlin did not instruct the jury that it was permitted to presume any element of justification or the charged crimes, or otherwise shift the burden of proof to Petitioner. Moreover, both times that Justice McLaughlin gave the challenged instruction, it was closely preceded or followed by admonitions that the State was "required to prove beyond a reasonable doubt that the defendant was not justified." Tr. 262:20-21; *see also id.* at 254:6-19. The challenged instruction tracked the language of New York's justification statute, N.Y. Penal Law § 35.15(2)(a), and New York's pattern jury instruction, R&R at 21 & n.12, and did not create ambiguity about when Petitioner was required to retreat or otherwise shift the burden of proof to Petitioner. *See Washington v. Fischer*, 150 F. App'x 8, 9 (2d Cir. 2005) (summary order) (purportedly erroneous jury instruction on justification did not amount to constitutional error, in part because the "jury charge tracked New York's justification statute and made clear that the state carried the burden of proving that [the petitioner] did not act in self defense"). The Court concludes that the duty-to-retreat instruction did not amount to constitutional error.

Second, and relatedly, there was no such error that infected the entire trial record. As the Second Circuit has explained, the challenged duty-to-retreat instruction must be viewed "in the context of the instructions as a whole and the trial record." *Gordon v. Arcanum Investigations, Inc.*, 646 F. App'x 18, 20-21 (2d Cir. 2016) (summary order) (quoting *Estelle*, 502 U.S. at 72). The rest of the jury charge is replete with instructions that the State bore the burden of disproving justification beyond a reasonable doubt and proving every element of the charged offenses beyond a reasonable doubt. *See, e.g.*, Tr. 228:4-10, 230:10-13, 233:5-7, 236:11-14, 240:25-241:8, 242:12-19. As Magistrate Judge Moses correctly explained, the

challenged instruction is just one sentence in a lengthy charge, and any error with respect to that sentence could not have infected the entire trial "in light of the strong overall evidence negating any claim of justification." R&R at 27 (quoting *Mojica*, 254 F. App'x at 30).

As a result, the Court finds that the duty-to-retreat instruction did not impermissibly shift the burden of proof from the State to Petitioner and there was no constitutional error. Petitioner has not demonstrated his entitlement to habeas relief under AEDPA.

### B. The R&R Appropriately Held That Any Error Was Harmless

Again relying on *Sandstrom*, Petitioner argues that the duty-to-retreat instruction was not harmless error. Obj. at 4-5. Even if there was error in the duty to retreat instruction, which is not the case, any error was harmless error.

In *Brown v. Davenport*, the Supreme Court clarified that to grant federal habeas relief, "a court must find that the petitioner has cleared both" the test set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and the conditions set forth by AEPDA. 142 S. Ct. at 1524. Under the Supreme Court's decision in *Brecht*, a federal court reviewing a final state court judgment should not grant federal "habeas relief based on trial error unless" the petitioner can show the error had a "substantial and injurious effect or influence" on the verdict. 507 U.S. at 637; *see also Davenport*, 142 S. Ct. at 1523 (same). Under this test, "[t]here must be more than a 'reasonable possibility' that the error was harmful." *Davis v. Ayala*, 576 U.S. 257, 268 (2015) (quoting *Brecht*, 507 U.S. at 637). If, as here, the state court does not conduct their own harmless-error analysis, then the Court "owe[s] no deference" to the state court "on that issue." *Orlando v. Nassau Cnty. Dist. Att'y's Off.*, 915 F.3d 113, 127 (2d Cir. 2019).

Petitioner has not established that there was an error here or that any error had a "substantial and injurious effect or influence" on the verdict. *Brecht*, 507 U.S. at 637. Both

13

times that Justice McLaughlin gave the duty-to-retreat instruction, it was immediately preceded or followed by the admonition that the State bore the burden of proving justification beyond a reasonable doubt. *See* Tr. 254:6-19, 262:16-21. He also reminded the jury that the State bore the burden of disproving justification throughout the charge. *See, e.g.*, Tr. 228:4-10, 230:10-13, 233:5-7, 236:11-14, 240:25-241:8, 242:12-19. This was sufficient to clearly advise the jury of the State's burden of proof regarding justification and the duty to retreat. *See Umali v. Heath*, 543 F. App'x 50, 52 (2d Cir. 2013) (summary order) (jury instruction on justification did not mislead the jury about the state's burden of proof where "the trial court informed the jury of the correct burden of proof on the issue of justification many times").

In addition, Magistrate Judge Moses properly concluded that the trial record "'presented strong overall evidence negating any claim of justification,' rendering any error in the duty-to-retreat instruction harmless." R&R at 27 (quoting *Mojica*, 254 F. App'x at 30). She explained that under New York law, Petitioner's use of deadly force was only justified if he reasonably believed that Taylor was using or about to use deadly physical force against him. *Id.* at 27-28. But she noted that the trial record showed that Taylor tried to punch Petitioner only once (and missed), and courts have held that a single attempted punch does not justify the use of deadly force under New York law. *Id.* (collecting cases). Moreover, the record reflected ample evidence from which a jury could find that Petitioner was not justified in using deadly force, since Taylor was unarmed, fifteen years older than Petitioner, overweight, inebriated, and acting alone. *Id.* at 29. Magistrate Judge Moses correctly concluded this record evidence would have given the jury abundant reasons to find that Petitioner was not justified in using deadly force, regardless of his ability to retreat. *See id.*

Thus, any allegedly erroneous duty-to-retreat instruction did not have a "substantial and injurious effect or influence" on the verdict.

## CONCLUSION

For the foregoing reasons, the Court adopts the R&R in its entirety. The petition is denied. The Clerk of Court is respectfully directed to close the case.

Dated: March 20, 2025
      New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge